

ATTORNEYS AT LAW
2033 GATEWAY PLACE, SUITE 300
SAN JOSE, CALIFORNIA 95110
TELEPHONE (408) 291-6200
FACSIMILE (408) 297-6000
www.be-law.com

May 19, 2015

**Via ECF and Hand Delivery**

Magistrate Judge Nathanael Cousins

    Re:    *Petróleos Mexicanos, et al.* v. *Hewlett-Packard Company, et al.*
             Case No. CV-14-05292-BLF (NC)

Dear Magistrate Judge Cousins:

Defendants Hewlett-Packard Company ("HP") and Hewlett-Packard Mexico, S. de R.L. de C.V. ("HP Mexico") (collectively, "Defendants") and Plaintiffs Petróleos Mexicanos and Pemex Exploración y Producción ("Pemex") (collectively, "Plaintiffs") submit this Joint Statement addressing unresolved discovery issues raised by Plaintiffs' Notices of Rule 30(b)(6) depositions of HP and HP Mexico (the "Deposition Notices").

**Unresolved Issue: Whether The Deposition Notices Are Overbroad And Seek Irrelevant And Unduly Burdensome Information From Defendants**

**Defendants' Position:**

Plaintiffs' Complaint concerns a $6 million contract between two Mexican corporations for products to be provided and services to be performed in Mexico. Specifically, HP Mexico, a Mexican subsidiary of HP, agreed to provide Petróleos Mexicanos and its subsidiary Pemex with business technology optimization (BTO) software, hardware, services, and licenses. (Compl. ¶¶ 9-12, 21.) (Ex. A.) Plaintiffs allege that, despite HP's internal anti-corruption policies and controls (*Id.* Ex. 1, at A2), HP Mexico secured the contract "by causing the corruption of officials who worked for Pemex" and in so doing "circumvent[ed] . . . [HP's] internal accounting controls" in connection with the BTO contracts, resulting in "the falsification of HP's books and records." (Compl. ¶¶ 2, 112; Ex. 1, at A3.) The Complaint includes four RICO claims and multiple state law claims against Defendants.

On February 10, 2015, Defendants filed their Motion to Dismiss Plaintiffs' Complaint (the "Motion"). (Ex. B.) In the Motion, Defendants argue that RICO does not apply extraterritorially (Motion at 7-13), and, because the pattern of racketeering alleged in the Complaint is extraterritorial, it is beyond the scope of RICO under governing Ninth Circuit law. (*Id.* at 13-16.) Specifically, the Complaint alleges that in *Mexico*, *Mexican* employees of HP Mexico, a *Mexican* company, bribed *Mexican* officers of Pemex, the *Mexican* state oil company, by paying them money, in *Mexico*, through *Mexican* intermediaries, to win contracts executed in *Mexico* by *Mexican* companies and to be performed in *Mexico*, thereby injuring the *Mexican* plaintiffs in *Mexico*. Because the alleged pattern of racketeering activity, taken as a whole, occurred outside the United States, and any alleged damage to Plaintiffs also occurred outside the United States, Plaintiffs' own allegations show that their claims are outside the territorial reach of the RICO statute. (Motion at 7-16; Reply at 1-11.) (Exs. B and D.)

Bergeson LLP

Magistrate Judge Nathanael Cousins
May 19, 2015
Page 2

Plaintiffs argue in their Opposition (Ex. C) that the Complaint alleges sufficient activities within the United States for RICO to apply. (Opposition at 9-14). Defendants' Motion, however, assumes that all of Plaintiffs' allegations of contacts with the United States are true but argues that they are not sufficient to bring Plaintiffs' claims within RICO's territorial ambit. (Reply at 1-3, 6-11.)

On February 13, 2015, Plaintiffs served the Deposition Notices along with written discovery requests. (Exs. E, F, and G.) The Deposition Notices seek testimony regarding locations of activities that Plaintiffs have alleged in their Complaint occurred in the United States. The Deposition Notices are overbroad and seek irrelevant information. In particular, the activities about which Plaintiffs seek testimony are the same activities that the Complaint alleges occurred in the United States. As such, obtaining additional information about the location of these activities will do nothing to aid Plaintiffs' effort to defeat Defendants' argument that Plaintiffs' RICO claims, as pleaded, are impermissibly extraterritorial as a matter of law. The Court will decide the legal validity of Plaintiffs' theory after the hearing on the motion to dismiss, scheduled for June 25, 2015. The Court's resolution of that motion may moot the need for the requested discovery, and the requested discovery will not change the outcome of the motion because Plaintiffs already have alleged that the conduct at issue is domestic. The requested discovery, therefore, is unnecessary and burdensome at this juncture.

Defendants met and conferred with Plaintiffs numerous times in an effort to obviate Plaintiffs' perceived need for the depositions, or at least narrow the scope of the examination topics. (Ex. H.) As part of the meet and confer process, Defendants provided a written proffer (the "Proffer") providing responses to each of the Deposition Notice topics. (*See* Proffer at 4-16.) (Ex. I.) These responses establish that the location of the majority of the activities inquired about in the Deposition Notices took place outside the United States. (*See* Proffer regarding Topics 1, 3-6, 8, 10, 12, 13, and 14.) Dissatisfied with these facts, however, Plaintiffs insist on going forward with the Depositions as to each of the categories. Given the Proffer and the pending motion to dismiss, however, there is no basis to proceed with the depositions. Indeed, the facts regarding the activities at issue, as set forth in the Proffer, are significantly less favorable to Plaintiffs' extraterritoriality argument than what is alleged in the Complaint. As such, Defendants advised Plaintiffs that they would be moving for a protective order. (Ex. J.)

First, as to the deposition topics where Defendants provided a detailed response — *i.e.*, regarding portions of Topics 1-4, Topic 5, portions of Topic 6, and Topics 7-14 — proceeding with a deposition regarding these topics would be unduly burdensome to Defendants as the information inquired about already has been provided to Plaintiffs.

Second, as to topics where Defendants stated that they do not have sufficient information to provide testimony — *i.e.*, regarding portions of Topic 1, pp. 8-10, Topic 13, and Topics 15-17 — they should not be required to produce a deposition witness where they do not have information regarding topics related to third parties.

Third, as to certain topics, Defendants submit that responding to certain questions would be unduly burdensome and oppressive. (*See* Proffer, Topic 1, pp. 4-7, Topic 2, p. 11, Topic 3, p. 11, Topic 4, pp. 11-12, and Topic 6, pp. 12-13.) For each of these questions, Defendants provided the primary location where the referenced activity occurred. To the extent, however, Plaintiffs seek each specific location that had any

Bergeson LLP

Magistrate Judge Nathanael Cousins
May 19, 2015
Page 3

connection whatsoever with the activities, even if the primary locations provided were domestic, any purported violation would be deemed "too peripheral" to "change the 'essentially foreign' nature of the [alleged] racketeering activity in this case," *Hourani* v. *Mirtchev*, 943 F. Supp. 2d 159, 165 n. 9, 167 (D.D.C. 2013). As such, Defendants should not be burdened with producing a witness to respond to irrelevant topics.

**Defendants' Proposed Compromise:**

Defendants voluntarily provided Plaintiffs with a Proffer containing detailed responses to questions posed by the deposition topics, to the extent Defendants had sufficient information to respond, and to the extent the questions were not unduly burdensome and oppressive. Defendants thus stand on their Proffer, coupled with their responses to the Written Discovery Requests.

**Plaintiffs' Position**

In 2014, Defendants agreed with the United States Department of Justice and the SEC that Defendants are responsible for bribes paid to employees of Plaintiffs that resulted in Plaintiffs paying exorbitant prices. (Non-Prosecution Agreement or "NPA", Compl. Ex. 1.) (Ex. A.) Federal prosecutors found that Defendants' illegal practices were part of "a global labyrinth of complex financial transactions used by HP to facilitate bribes to foreign officials." (DOJ Press Release, Opp. Ex. 1.) (Ex. C.) Plaintiffs subsequently brought this action against Defendants. The Complaint alleges, in part, that Defendants (a) used United States wires to authorize the payment of bribes from the United States, including the payment of an "influencer fee" to middle-men—the Pass-Through Partner (or the "intermediary) and Intellego (or the "Consultant"); and (b) arranged for nine lavish trips to the United States by a Pemex official, Manuel Reynaud Aveleyra, as part of the ongoing conspiracy. HP and HP Mexico paid for the bribes from a correspondent bank account in the United States through separate payments totaling over $1.66 million. Part of these bribes were ultimately received by an entity controlled by Reynaud Aveleyra.

Plaintiffs have limited the matters for deposition now to: (1) Defendants' contradictions of findings made by the United States government and (2) the flow of illicit funds amongst the enterprise members.[1]

"[T]he party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied," and "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *3 (N.D. Cal. Mar. 6, 2014) (quotations and citations omitted). Neither Defendants' proffer nor pending Motion satisfy their heavy burden.

Proffer: "[T]he Federal Rules of Civil Procedure do not permit a party served with a Rule 30(b)(6) deposition notice or subpoena request to elect to supply the answers in a written response to an interrogatory in response to a Rule 30(b)(6) deposition notice or subpoena request. Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (internal quotations

---

[1] Plaintiffs do not withdraw the other topics, but rather limit the deposition prior to the June 25, 2015, hearing on the Motion to Topics 5, 13, 15, 16, and 17, and the portion of Topic 1 relating to false entries.

Magistrate Judge Nathanael Cousins
May 19, 2015
Page 4

and citations omitted). Likewise, even if the Court accepts Defendants' professed lack of "sufficient information" as true, "a claimed lack of knowledge does not provide sufficient grounds for a protective order." *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06CV408 WQH (AJB), 2007 WL 1120567, at *4 (S.D. Cal. Apr. 6, 2007).

Moreover, the proffer contradicts findings by the United States. Proffer Topic No. 13 states that "Defendants do not have knowledge of where the correspondent bank(s) for this transaction were located, if any." (Proffer at 15.) The NPA, however, plainly states that "HP MEXICO made those payments via wire transfer in U.S. dollars *through a correspondent bank account in the United States*." (NPA ¶ 17 (emphasis added).) (Ex. A.) This contradiction is especially disturbing because, in the NPA, Defendants agreed, "that they shall not" contradict "the facts described" in the NPA. (NPA at 2.) (Ex. A.)

Proffer Topic No. 1 states that "[t]he false entries referred to in Paragraph III.D of the SEC Order were not consolidated and reported by HP." (Proffer at 6.) However, Paragraph III.D. of the SEC Order states, "The false entries were then consolidated and reported by HP in its consolidated financial statements." (SEC Cease-and-Desist Order, Compl. Ex. 2 at 12.) (Ex. A.) These contradictions raise troubling questions whether Plaintiffs conducted an adequate investigation before providing their proffer.

Defendants also deny having knowledge regarding payments described in the NPA. In particular, in Proffer Topic Nos. 5 and 15, Defendants deny having information regarding the location from where money was paid by the Pass-Through Partner (the "Intermediary") to Intellego (the "Consultant"), or the location of the bank that received these transfers, as described in the NPA. (Proffer at 12, 15.) Moreover, in Proffer Topic Nos. 16 and 17, Defendants deny having information regarding the location of the entity controlled by Reynaud Aveleyra that received payment or the bank account that received the money the Consultant paid to this entity, as described in the NPA. (Proffer at 15-16.) There is ample reason to believe that someone at Defendants has information on these topics. In the NPA, Defendants agreed to very specific facts regarding the dates, amounts, and parties involved in these transactions. Defendants even admitted to "arranging payments to be made through the INTERMEDIARY to CONSULTANT." (NPA ¶ 19.) (Ex. A.) It strains credulity that Defendants would make such admissions yet lack any knowledge of the payment locations.

Plaintiffs are entitled to probe Defendants' professed lack of information. To date, Defendants have refused, in their proffer and during meet and confers, to provide Plaintiffs with *any* information regarding what documents have been reviewed and which persons have been consulted to create Plaintiffs' discovery responses. (April 6, 2015 letter from R. Bernstein.) (Ex. K.) Defendants will not even say if they have spoken with the HP regional officials that approved the increased commissions used to bribe Pemex officials. (*See id.*) Moreover, although Defendants have chosen to use different law firms to litigate this case than the law firms used in responding to the government investigations, Defendants will not say if the investigations law firms were even consulted in responding to Plaintiffs' discovery.

Motion: Defendants do *not* contend that denial of their Motion would moot the limited 30(b)(6) topics. Instead, Defendants wrongly argue that their pending Motion renders that limited discovery premature. *See Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of

Bergeson LLP

Magistrate Judge Nathanael Cousins
May 19, 2015
Page 5

litigation."); *Garcia v. Enter. Holdings, Inc.*, No. 14CV00596SBAKAW, 2014 WL 4623007, at *3 (N.D. Cal. Sept. 15, 2014) (denying request to stay of discovery during motion to dismiss).

Defendants ignore three ways in which their Motion makes Plaintiffs' limited discovery particularly timely. First, their Motion asked the Court to decline jurisdiction over Plaintiffs' state law claims because this case "does not belong in any court of the United States" as "the conduct and injury occurred in Mexico." "(Mot. at 2, 25 & n.16). Proposing a "foreign forum" is a "*forum non conveniens*" argument. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013). Forum issues are appropriate for discovery *prior* to resolution of a motion to dismiss. *See Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*, CV08-3226 AHM PLAX, 2008 WL 5412431, at *1 (C.D. Cal. Dec. 29, 2008); *see also Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed").

Second, Defendants have argued that "amendment would be futile." (Reply at 15.) (Ex. D.) But Defendants have proposed that the District Court should weigh the "foreign activity" against the "domestic conduct." (Mot. at 16.) (Ex. B.) Although Defendants' argument is wrong, were the Court to adopt Defendants' approach, the location of payments and false entries could be crucial to such weighing. Discovery about these locations is plainly relevant to whether an amendment would be futile.

Third, Defendants' Reply brief belatedly argued that Plaintiffs have not pled sufficient facts to infer HP's intent. (*See* Ex. D at 9). Although Plaintiffs objected (*see* Plaintiffs' Objection to New Evidentiary Issues In Reply) (Ex. L.), if the District Court permits and agrees with this argument, the discovery sought would be even more relevant to whether amendment would be futile.

**Plaintiffs' Proposed Compromise:**

(1) Limit for now the deposition's scope to Topics 5, 13, 15, 16, and 17, as well as the portion of Topic 1 relating to false entries. (2) Allow Defendants to produce one witness, provided that witness is fully prepared based on the knowledge of both HP and HP Mexico, including their counsel and all other persons involved in the government investigations. (3) Limit such deposition to four hours of testimony.

Bergeson LLP

Magistrate Judge Nathanael Cousins
May 19, 2015
Page 6


Respectfully submitted,


 /s/ Caroline McIntyre, Esq.
Caroline McIntyre, Esq.

BERGESON, LLP

WACHTELL, LIPTON, ROSEN & KATZ

Attorney for Defendants
HEWLETT-PACKARD COMPANY and
HEWLETT-PACKARD MEXICO,
S. DE R.L. DE C.V.

    The above signatory attests that concurrence in the filing of this document, we have obtained authority from the signatory below to sign on their behalf.


 /s/ Melinda M. Morton, Esq.
Melinda M. Morton, Esq.

PROCOPIO, CORY, HARGREAVES AND SAVITCH LLP

WILLKIE FARR & GALLAGHER LLP

Attorneys for Plaintiffs
PETRÓLEOS MEXICANOS, and
PEMEX EXPLORACIÓN Y PRODUCCIÓN