# EXHIBIT B

Table of Contents

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

## FORM 20-F

**ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934**
for the fiscal year ended December 31, 2014
Commission File Number 0-99

# PETRÓLEOS MEXICANOS
(Exact name of registrant as specified in its charter)

| **Mexican Petroleum** | **United Mexican States** |
|---|---|
| (Translation of registrant's name into English) | (Jurisdiction of incorporation or organization) |

**Avenida Marina Nacional No. 329
Colonia Petróleos Mexicanos
11311 México D.F., México**
(Address of principal executive offices)

**Rolando Galindo Gálvez
(5255) 1944 9700
ri@pemex.com
Avenida Marina Nacional No. 329
Torre Ejecutiva Piso 38 Colonia Petróleos Mexicanos
11311 México D.F., México**
(Name, telephone, e-mail and/or facsimile number and address of company contact person)

Securities registered or to be registered pursuant to Section 12(b) of the Act. <u>None</u>
Securities registered or to be registered pursuant to Section 12(g) of the Act. <u>None</u>
Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act.

<u>Title of Each Class</u>
9.50% Global Guaranteed Bonds due 2027
9 $\frac{1}{4}$% Global Guaranteed Bonds due 2018
8.625% Bonds due 2022
5.75% Guaranteed Notes due 2018
9 $\frac{1}{4}$% Guaranteed Bonds due 2018
8.625% Guaranteed Bonds due 2023
9.50% Guaranteed Bonds due 2027
6.625% Guaranteed Bonds due 2035
6.625% Guaranteed Bonds due 2038
8.00% Guaranteed Notes due 2019
6.000% Notes due 2020
5.50% Notes due 2021
6.500% Bonds due 2041
4.875% Notes due 2022
5.50% Bonds due 2044
3.500% Notes due 2018
Floating Rate Notes due 2018
3.500% Notes due 2023
4.875% Notes due 2024
3.125% Notes due 2019
6.375% Bonds due 2045

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
**Yes** ☐ **No** ☒

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.
**Yes** ☐ **No** ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.
**Yes** ☒ **No** ☐

[Table of Contents](#)

The SFP initiated administrative proceeding against several public sector employees in 2014. Four employees of Pemex-Exploration and Production were barred from public sector employment for six months to one year. The employees filed motions before the Federal Court of Fiscal and Administrative Justice requesting that the penalties be declared null and void. As of the date of this report, these motions are still pending resolution, except for one case in which a judgment declaring the penalty null and void was issued. The SFP is expected to file a motion to review this resolution.

On April 9, 2014, the SEC issued an order imposing sanctions against Hewlett-Packard Company (or HP) based on its findings that HP's subsidiaries in Mexico, Russia and Poland made improper payments to certain public officials in order to obtain public contracts in violation of the U.S. Foreign Corrupt Practices Act. In the case related to Mexico, the sanctions related in part to allegations that Hewlett-Packard México, S. de R.L. de C.V., an HP subsidiary in Mexico, paid a Mexican information-technology and consulting company more than U.S. $1 million to win a software and licensing contract with Petróleos Mexicanos worth approximately U.S. $6 million. The SEC's order alleged that a former officer of Petróleos Mexicanos received a portion of the HP subsidiary's unlawful payment to the consulting company. The Internal Control Body of Petróleos Mexicanos concluded its internal investigation after finding no improper payment.

*Actions Against the Illicit Market in Fuels*

The illicit market in fuels in Mexico is based on the theft, adulteration and illegal transport and distribution of the hydrocarbons that we produce, and is primarily characterized by the following:

- illegal tapping of our pipelines, which threatens the integrity of our pipeline system and increases the associated risks to personnel, facilities, the general population and the environment;

- adulteration of our hydrocarbon products, which compromises product quality and adversely impacts consumers and our reputation; and

- theft and illegal trade in fuels, which reduce our revenues by the amount that would have been generated from the sale of stolen products, and reduce our net income, because the production cost of stolen products is included in our cost of sales.

Given the sophistication and breadth of this network of criminal activity, preventative measures alone have proved insufficient to eliminate the threat of the illicit market in fuels. In response, we have implemented several initiatives with the aim of developing a sustainable operating model to safeguard the areas in which we operate, which comprise approximately 2.0 million square kilometers of onshore fields and 3.2 million square kilometers of Mexican territorial waters. These initiatives are intended to strengthen our ability to combat the illicit market in fuels, and include our U.S. $282.0 million investment between 2014 and 2016 in the supervisory control and data acquisition (SCADA) measurement system, which is designed to detect any drop in pipeline pressure in order to identify and prevent illegal pipeline taps. These measures form part of our comprehensive approach to reduce the risks described above, with the goal of optimizing our operations and protecting our personnel, facilities, the general population and the environment.

In particular, during 2014, we implemented the following strategic measures in order to decrease incidents of criminal activity at our facilities:

- Increased pipeline surveillance by 10.0% as compared to 2013, in order to improve detection of illegal tapping in the national pipeline system.

- Identified 3,187 vehicles involved in the illicit market in fuels, as compared to 1,567 vehicles in 2013, which represents a 103.4% increase, and increased the number of individuals brought before judicial authorities in connection with the illicit market in fuels to 1,381, as compared to 1,059 individuals brought before judicial authorities in 2013, which represents a 30.4% increase.

- Inspected rights of way and facilities through a total of 64,379 patrols in 2014, at an average of 26,588 kilometers per day by vehicle and 593 kilometers per day by foot, as compared to 33,041 kilometers per day by vehicles and 584 kilometers per day by foot during 2013. These surveillance activities were carried out in coordination with the *Secretaría de la Defensa Nacional* (Ministry of National Defense), the Mexican Navy and other governmental authorities.

194

**Exhibit 12.2**

**CERTIFICATION**

I, Mario Alberto Beauregard Álvarez, certify that:

1. I have reviewed this annual report on Form 20-F of Petróleos Mexicanos;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4. The company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5. The company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent function):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

Date: April 30, 2015

By: /s/ MARIO ALBERTO BEAUREGARD ÁLVAREZ<br>Name: Mario Alberto Beauregard Álvarez<br>Title: Chief Financial Officer